STACHOWIAK v SUBCZYNSKI

Docket No. 64214. Decided July 13, 1981. On application by the defendant for leave to appeal the Supreme Court, in lieu of granting leave to appeal, vacated the judgment of the Court of Appeals and remanded the case to that Court for consideration of another issue.

Elizabeth and Paul Stachowiak brought an action for medical malpractice against Janusz Subczynski, M.D. A jury in Wayne Circuit Court, Patrick J. Duggan, J., returned a verdict for the defendant of no cause of action. The defendant was permitted, during his testimony, to use charts of statistics taken from medical textbooks as the sources on which he had relied in choosing the course of treatment for Elizabeth Stachowiak, who had suffered from an aneurysm. The Court of Appeals, T. M. Burns, P.J., and M. F. Cavanagh and MacKenzie, JJ., reversed and remanded for a new trial on the ground that material in a textbook is inadmissible for purposes other than impeachment of an expert witness (Docket No. 78-849). Defendant applies for leave to appeal.

In a per curiam opinion signed by Justices Kavanagh, Williams, Levin, Fitzgerald, Ryan, and Moody, the Supreme Court *held:*

1. The objection to the admission into evidence of treatises and other professional literature to prove the truth of the matters asserted in them is that the material is hearsay. However, the hearsay objection applies only if the evidence is offered to prove the truth of the matter asserted. Evidence that cannot be admitted to prove the truth of the matters asserted has been frequently admitted for other purposes. The trial judge's ruling and instructions to the jury in this case made it clear that the evidence was not admitted to prove the truth of the matter asserted, but rather was admitted to explain why the doctor proceeded as he did. The doctor's reasons for choosing the course of treatment and his understanding of the probable outcomes of various treatments were relevant to the action because the thrust of the complaint was that the conservative course of treatment initially followed by the defendant was improper.

2. The trial judge recognized that the display of the charts

created the danger that the jury might have difficulty in limiting its consideration of the material to proper purposes. However, it was central to the defense that Dr. Subczynski based his judgment of the treatment to be used on his understanding of the consequences of various treatments. The potential for misuse of the charts by the jury was reduced by the fact that similar statistics were presented during the testimony of other expert witnesses. Finally, the trial judge took steps to minimize the risk of misuse of the evidence by the jury. He required the removal of identifying information from the charts before they could be displayed and gave careful and repeated instructions to the jury as to the limited purpose for which the evidence was offered. It cannot be said that he abused his discretion in allowing use of the charts.

The judgment of the Court of Appeals is reversed and the case is remanded to that Court for consideration of the other issue raised by the plaintiffs.

Chief Justice Coleman concurred in the reversal but would decide the plaintiffs' allegation of improper argument by the defendant's counsel, rather than remand the matter to the Court of Appeals. The transcript shows heated arguments by counsel for the plaintiffs and for the defendant, which included deprecatory remarks about the expert witnesses. However, the trial judge issued a cautionary instruction to the jury, and the statements were not so prejudicial that they could not be cured by a cautionary instruction.

93 Mich App 245; 287 NW2d 194 (1979) reversed.

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Michael Gagleard*) for plaintiffs.

*Sullivan, Ranger, Ward & Bone* for defendant.

PER CURIAM. The jury returned a verdict for the defendant in this medical malpractice case. The Court of Appeals reversed because the defendant used charts taken from medical textbooks during his testimony, and the defendant has applied for leave to appeal. We reverse and remand to the Court of Appeals for further proceedings.

I

Plaintiff Elizabeth Stachowiak was admitted to a hospital on May 12, 1972, and came under the care of Dr. Subczynski, a neurosurgeon. She was diagnosed as having a subarachnoid hemorrhage. Dr. Subczynski suspected that Mrs. Stachowiak had an aneurysm in the anterior connecting artery. However, during this first hospitalization he did not perform an arteriogram to confirm whether the aneurysm existed and, if so, to determine its location. His reason for not doing so was his belief that Mrs. Stachowiak was such a poor risk for surgery that an operation could not be performed even if an arteriogram located the aneurysm.

A conservative course of treatment was followed, and Mrs. Stachowiak was discharged from the hospital on May 27, 1972. She was readmitted a month later. An unsuccessful arteriogram was attempted on July 5, 1972, and a successful one performed on July 13, 1972, locating an aneurysm in the anterior connecting artery. Surgery to clip the aneurysm was performed on July 21, 1972.

The thrust of the complaint by the plaintiffs was that the conservative course of treatment initially followed by Dr. Subczynski was improper. They maintained that the arteriogram should have been performed on Mrs. Stachowiak's first admission to the hospital, and that on the discovery of the location of the aneurysm, prompt surgery should have been performed. They attribute Mrs. Stachowiak's post-operative difficulties to the delay in performing surgery.

The defense had prepared several charts, apparently enlargements of pages from medical textbooks, and proposed to use them during the testimony of Dr. Subczynski. The charts presented

information such as probabilities over time of death from an aneurysm in the absence of medical intervention, showing high probabilities of death within the first few days, with steady decreases thereafter. Another showed death rates from bleeding aneurysms given different modes of treatment as determined by a cooperative study by a number of researchers.

Plaintiffs' counsel objected to the use of these charts as hearsay and maintained that allowing their use would be comparable to admitting medical textbooks as substantive evidence, citing *Mihailoff v Meijer, Inc,* 53 Mich App 312; 218 NW2d 798 (1974).

The defense argued that the information on the charts was that on which Dr. Subczynski relied in making his decisions regarding the course of treatment of Mrs. Stachowiak. Regardless of the accuracy of the information, the jury was entitled to know that Dr. Subczynski did rely on available data in choosing the course of treatment, as that fact bears on the reasonableness of his conduct.

The trial judge required defense counsel to excise from the charts all indications that they were taken from medical textbooks. He ruled that the charts themselves could not be given to the jury during deliberations, but that they could be used during the examination of Dr. Subczynski. The judge instructed the jury that the charts were not admitted for the truth of the information they presented, but only as relating to the doctor's claim that he relied on this information in treating the patient. The charts were used during Dr. Subczynski's testimony, and there were a number of further objections that specific testimony went beyond the guidelines set by the trial judge. The judge gave additional cautionary instructions similar to the original one.

## II

The Court of Appeals noted that statements in learned treatises are not admissible for purposes other than impeachment, citing MRE 707[1] and our decision in *Bivens v Detroit Osteopathic Hospital,* 403 Mich 820 (1978).[2] The Court concluded that because the exhibits were excerpts from a learned treatise, it was error to permit their use at trial, and reversed.[3] 93 Mich App 245; 287 NW2d 194 (1979).

## III

The objection to the admission of treatises and other professional literature to prove the truth of the matters asserted in them is, of course, that the material is hearsay. McCormick on Evidence (2d ed), § 321, p 743. Although some have argued for allowing the use of such material as substantive

---

[1] "To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice, are admissible for impeachment purposes only."

The rule was not in effect at the time of the trial of this case in December 1977.

[2] "As we held in *Jones v Bloom,* 388 Mich 98 [200 NW2d 196] (1972), learned treatises are admissible for impeachment purposes. We declined to make learned treatises admissible as substantive evidence in the recently promulgated Michigan Rules of Evidence. Compare Federal Rule of Evidence 803(18). The trial judge thus erred by allowing plaintiff's counsel to read to the jury excerpts from a medical textbook."

[3] In addition, the Court of Appeals found that certain comments made by defense counsel in closing argument were improper. However, it did not decide whether they required reversal.

evidence,[4] as the Court of Appeals noted in this case, we have not done so. MRE 707; *Bivens v Detroit Osteopathic Hospital, supra.*

However, as the trial judge recognized, the hearsay objection applies only if the evidence is offered to prove the truth of the matter asserted. MRE 801(c) defines hearsay:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The rule was the same before the adoption of MRE 801(c). Evidence that could not have been admitted to prove the truth of the matters asserted has been frequently admitted for other purposes. *E.g., Belvidere Land Co v Owen Park Plaza, Inc,* 362 Mich 107; 106 NW2d 380 (1960); *Simpson v Burton,* 328 Mich 557; 44 NW2d 178 (1950); *McNitt v Henderson,* 155 Mich 214; 118 NW 974 (1908). The trial judge's ruling and instructions to the jury in this case could not have been clearer that the evidence was not admitted to prove the truth of the matter asserted, but rather was admitted to explain why the doctor proceeded as he did. There can be no doubt that the doctor's reasons for choosing the course of treatment and his understanding of the probable outcomes of various treatments were relevant to the action.

## IV

However, analysis must not stop with the determination that the evidence was relevant and not subject to a hearsay objection. MRE 403 requires

---

[4] 6 Wigmore on Evidence (Chadbourn rev), §§ 1690-1693; FRE 803(18).

the exercise of discretion by the trial judge in ruling on the admissibility of evidence:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[5]

As the trial judge recognized in this case, the display of these charts created the danger that the jury might have difficulty limiting its consideration of the material to proper purposes.[6] However, in the circumstances of this case we find no error in the trial judge's ruling as to the use of these charts. First, it is clear that it was central to the defense that Dr. Subczynski based his judgment as to how to proceed with the treatment on his understanding of the consequences of various treatments. Second, the potential for misuse of the charts by the jury was reduced by the fact that similar statistics were presented during the testimony of other expert witnesses. Finally, the trial

[5] MRE 403 is consistent with prior Michigan law. *E.g., People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973).

[6] The trial judge observed:

"I guess my only concern—not only concern—a concern I have is that sometimes it is extremely tough to separate that which is being offered for the truth of the matter contained and that on which someone relied."

After further argument, the judge said:

"I think the doctor can, in this type of case, since it is going to the basis for forming his opinion, may say: I relied on these studies in forming my opinion. But the truth of those studies, the accuracy of those studies is not even relevant in that question.

*   *   *

"Now, to the extent that he wants to introduce those studies, page by page, then I think we are unnecessarily buttressing and I would not let the content of those in in the verbatim form that may be contained in the textbook."

judge took steps to minimize the risk of misuse of the evidence by the jury. He required the removal of identifying information from the charts before they could be displayed and gave careful and repeated instructions as to the limited purpose for which the evidence was offered.[7] We cannot say that he abused his discretion in allowing use of the charts.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we vacate the judgment of the Court of Appeals and remand the case to that Court for consideration of the other issue raised by the plaintiffs. On remand, the circuit court judgment should be affirmed unless the Court of Appeals finds that reversal is required because of comments by defense counsel in closing argument.

We do not retain jurisdiction.

KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.

COLEMAN, C.J. *(for reversal).* I would reverse for reasons stated in the per curiam opinion.

However, I would not remand to the Court of Appeals for consideration of plaintiffs' allegation

---

[7] For example, the trial judge told the jury at one point:

"The jury will continue to be instructed that any information that he recites from any other studies are not to be considered by them as substantive evidence or for the truth of the matter, simply as information that he relied on. Its accuracy will have to be decided by the jury, or his right to rely on it shall be decided by the jury in their judgment."

He later instructed:

"Let me give an instruction at this time so the jury understands clearly. The doctor has testified as you have just heard from some reports from other joint studies or other doctors and you must understand that he was not a part of those nor can he testify as to the accuracy of those reports.

"And I am not allowing that evidence into this trial for the accuracy of those reports. I am only allowing it in for the simple fact that he claims he relied on these reports and you may give that whatever weight you decide in your deliberations."

of improper closing argument by the defendant, but would decide the matter herewith. There is no reason to add to the expense of further consideration by the Court of Appeals, the result of which foreseeably would be appealed again to this Court.

The transcript reveals heated closing arguments by both plaintiffs and defendant, followed by a rebuttal by plaintiffs' second attorney which substantially nullified defendant's deprecatory remarks about plaintiffs' experts. He then added a few deprecatory remarks of his own. The judge issued a cautionary instruction.

The trial had proceeded for over two weeks (December 5-22, 1977). It is understandable that the nerves of all counsel were a bit frayed, but I agree with the trial judge that the statements were not so prejudicial that they could not be cured by a cautionary instruction.

Therefore, I concur in part and dissent in part.