GREATHOUSE v RHODES

Docket No. 214434. Submitted April 4, 2000, ·at Grand Rapids. Decided
   August 18, 2000, at 9:00 A.M. Leave to appeal sought.

   Sally Greathouse, as personal representative of the estate of Robert
   Greathouse, deceased, brought an action in the Berrien Circuit
   Court against Charles Rhodes, M.D., and others, alleging malprac-
   tice in the medical care of the decedent. Before trial, the plaintiff
   moved to strike two board-certified family practitioners and an
   internist named on Rhodes' witness list as experts. The plaintiff
   contended that those witnesses were not qualified under MCL
   600.2169(1)(a); MSA 27A.2169(1)(a), which requires expert wit-
   nesses testifying for or against a board-certified specialist on the
   issue of standard of care to be board-certified in the same specialty
   as the person for or against whom the testimony is offered,
   because Rhodes was a board-certified general surgeon but his
   expert witnesses were not. The court, Lynda A. Tolen, J., denied
   the motion. Following a jury trial at which the court refused to
   allow the plaintiff to use treatises during direct examination of her
   expert witnesses on standard of care for the purpose of establish-
   ing that their opinions met the requirements of MCL 600.2955(1);
   MSA 27A.2955(1), judgment was entered on a jury verdict for the
   defendants. The plaintiff appealed.

      The Court of Appeals *held*:

      1. A party forfeits the issue of an expert's qualifications under
   subsection 2169(1)(a) by failing to challenge the expert's qualifica-
   tions within a reasonable time after learning the expert's identity.
   The plaintiff was aware of at least one of Rhodes' proposed experts
   at or near the beginning of litigation and had opportunities during
   discovery to learn that the credentials of the other proposed
   experts did not match those of Rhodes, yet she waited until less
   than twenty-eight days before trial—more than two years into the
   litigation—to make the motion to strike. Moreover, Rhodes would
   have been severely prejudiced had the trial court granted the
   motion to strike.

      2. The trial court did not err in refusing to allow the plaintiff to
   use treatises to establish that her experts' opinions were admissible
   under subsection 2955(1). Subsection 2955(1) sets forth the factors

a trial court must consider in determining whether an expert's scientific opinion is admissible in an action for the death of a person or for injury to a person or property; it may not be used by a party as a basis for introducing treatise evidence that, as in this case, would be inadmissible hearsay and would not be admissible under MRE 707, which permits parties to introduce statements contained in treatises for impeachment purposes only.

3. Two other issues relating to the plaintiff's proposed uses of the treatises were not properly preserved for appeal. Those issues were not related to the claim under § 2955 and should have been, but were not, raised separately in the statement of questions presented.

Affirmed.

WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE.

A person testifying in a medical malpractice action as an expert on the appropriate standard of practice or care is required by statute to be a licensed health professional and to have the same general practice, specialty, or board-certified specialty as the person for or against whom the testimony is offered; a party forfeits the issue of an expert's qualifications where the party fails to challenge the expert's qualifications within a reasonable time after learning the expert's identity and the opposing party would be severely prejudiced by disqualification of the expert (MCL 600.2169[1][a]; MSA 27A.2169[1][a]).

*Ferris & Salter, P.C.* (by *Heidi Salter-Ferris*), for Sally Greathouse.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for Charles Rhodes, M.D., and Southwestern Medical Clinic.

Before: SAAD, P.J., and JANSEN and TALBOT, JJ.

TALBOT, J. In this medical malpractice action, plaintiff appeals as of right from the jury's verdict of no cause of action. Plaintiff challenges the trial court's rulings (1) denying her motion to strike defendant Dr. Charles Rhodes' expert witnesses on the ground that they were not qualified under MCL 600.2169(1)(a); MSA 27A.2169(1)(a) to testify regarding the standard

of care, and (2) denying her request to use learned treatises to question her expert witnesses on direct-examination in order to establish that their opinions were supported by "peer review publications" and met other requirements of MCL 600.2955(1); MSA 27A.2955(1). We affirm.

I

In December 1994, decedent Robert Greathouse began to experience episodes of severe chest pain. The decedent sought treatment from his regular physician, Dr. Charles Rhodes, whom the decedent had seen regularly for the last five years. Dr. Rhodes prescribed medication and referred the decedent for a cardiac stress test. Another doctor conducted the stress test and, after reviewing the results and the decedent's symptoms, instructed the decedent to immediately consult a cardiologist. Dr. Rhodes referred decedent to cardiologist Dr. John Duge, who prescribed a different type of medication and scheduled an angiogram. The decedent, however, suffered a fatal heart attack six days before the scheduled procedure.

On May 13, 1996, plaintiff filed an amended complaint against Drs. Rhodes and Duge, alleging that their failure to properly diagnose and treat the decedent's unstable angina caused his death.[1] In compliance with MCL 600.2912d(1); MSA 27A.2912(4)(1), plaintiff filed with the complaint an affidavit of merit signed by Dr. Wendy Marshall, which specified that

---

[1] Plaintiff also sued defendants Southwestern Medical Clinic and University Medical Specialists, Dr. Rhodes' and Dr. Duge's respective employers, on a vicarious liability theory.

she was a board-certified surgeon. In response, Dr. Rhodes filed an affidavit of meritorious defense signed by Dr. Clinton Wilson in compliance with MCL 600.2912e(1); MSA 27A.2912(5)(1). The affidavit of meritorious defense did not indicate Dr. Wilson's practice area or background.

Plaintiff deposed Dr. Rhodes on July 9, 1997. Sometime before trial, Dr. Rhodes named three standard of care witnesses to testify on his behalf. Two of the proposed witnesses were board-certified family practitioners and the third specialized in internal medicine. On July 6, 1998, less than a month before trial, plaintiff filed a motion to strike Dr. Rhodes' experts pursuant to MCL 600.2169(1)(a); MSA 27A.2169(1)(a) on the ground that they were not qualified to testify regarding the appropriate standard of care. Plaintiff argued that because Dr. Rhodes was a board-certified general surgeon, subsection 2169(1)(a) required that his expert witnesses be board-certified surgeons as well. While conceding that this Court held the predecessor statute to § 2169 unconstitutional in *McDougall v Eliuk*, 218 Mich App 501; 554 NW2d 56 (1996), plaintiff stated that she wanted to preserve the issue in the expectation that the Supreme Court would reverse *McDougall*. Dr. Rhodes argued in response that even if subsection 2169(1)(a) were deemed constitutional, it did not apply to him or his expert witnesses because he did not actually practice as a general surgeon and did not treat the decedent in that capacity. Following a hearing held on August 3, 1998, the day before trial, the trial court accepted plaintiff's interpretation of subsection 2169(1)(a) and granted the motion to strike.

On August 4, 1998, the first day of trial, the trial court heard arguments on Dr. Rhodes' motion for reconsideration and his alternative motion to adjourn trial. Stating that it did not believe that its interpretation of subsection 2169(1)(a) constituted palpable error, the trial court denied the motion for reconsideration. With respect to the motion to adjourn, Dr. Rhodes' attorney maintained that while he was aware of § 2169, he did not anticipate the court's ruling, which he said was "very significant in terms of its impact in our case." Dr. Rhodes' attorney explained that "while the loss of experts may not foreclose our ability to put on proofs in the person of Doctor Rhodes, it . . . certainly limits drastically what we will be able to do and how we will be able to do it." Dr. Rhodes therefore requested that the court adjourn trial to allow him time to obtain experts specializing in general surgery and that it grant leave to amend his witness list.

In addressing Dr. Rhodes' concerns, the trial court noted that plaintiff's motion to strike was filed less than twenty-eight days before trial and heard on the day of trial in violation of the trial court's scheduling order, which provided: "all motions, the basis which is or should be known prior to trial shall be filed, served, and heard as soon as possible . . . before the settlement conference." Although plaintiff maintained that the motion was timely because it was filed shortly after she deposed the last of Dr. Rhodes' experts, Dr. Rhodes claimed that plaintiff's argument was disingenuous because he had complied with discovery and plaintiff had repeatedly canceled earlier scheduled depositions. Presented with these arguments, the trial court concluded that while the denial

of the motion to adjourn would not end the litigation, it would

> certainly prejudice the defense of Doctor Rhodes in this case in that he would be left without . . . any expert and would be forced to rely on his own testimony as to the standard of care and whether or not he breached it and certainly that is not a desirable position to be in [in this] litigation.

After a discussion in chambers, the court stated that upon further consideration it was compelled to adhere to the *McDougall* holding that § 2169 was unconstitutional and reversed its previous ruling granting plaintiff's motion to strike, thereby permitting Dr. Rhodes' family practice experts to testify at trial.

Before plaintiff presented her standard of care experts at trial, the trial court also heard arguments regarding her plans to question them with learned treatises on the diagnosis and treatment of unstable angina. Plaintiff wanted to use excerpts and enlarged graphs taken from a federal Department of Heath and Human Services publication entitled *Unstable Angina and Management Clinical Practice Guideline* and similar guidelines approved by the American Heart Association. Defendants argued that the materials were hearsay and inadmissible under MRE 707 (use of learned treatises for impeachment) because plaintiff was not using them to impeach her own witnesses. Plaintiff responded that she was not using the materials as substantive evidence, but rather to establish under MCL 600.2955(1); MSA 27A.2955(1) that her experts' opinions about the standard of care and defendants' failure to comply with that standard were based on accepted scientific standards. The trial

court ruled that plaintiff could not use the material for this purpose because § 2955 applied only to "scientific opinions" and issues concerning the standard of care, unlike those pertaining to proximate cause, did not involve scientific opinion.

Following the presentation of proofs, the jury returned a verdict for defendants.

II

Plaintiff first argues on appeal that the trial court abused its discretion in denying her motion to strike Dr. Rhodes' family practice experts because they were not qualified under MCL 600.2169(1)(a); MSA 27A.2169(1)(a) to testify regarding the appropriate standard of care. Subsection 2169(1)(a) provides in pertinent part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:
>
> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. *However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.* [Emphasis added.]

Plaintiff contends that because Rhodes is a "specialist who is board certified" in general surgery, subsection 2169(1)(a) requires that his standard of care experts also be specialists who are board-certified in

general surgery. Rhodes, on the other hand, maintains that although he is "board certified," he is not a "specialist" in general surgery because he has been practicing solely as a general practitioner for many years and treated the decedent in that capacity. Rhodes therefore claims that subsection 2169(1)(a) does not require that his experts be board-certified surgeons.

Initially we note that plaintiff relies on the 1993 version of § 2169. In *McDougall, supra,* on which the trial court relied in striking plaintiff's motion, this Court held the 1986 version of the statute unconstitutional because it conflicted with MRE 702 and therefore usurped the Michigan Supreme Court's authority over evidentiary rules. After this appeal was filed, our Supreme Court reversed *McDougall* and concluded that § 2169 is "an enactment of substantive law" and "[a]s such does not impermissibly infringe this Court's constitutional rule-making authority." *McDougall v Schanz,* 461 Mich 15; 597 NW2d 148 (1999).[2] Consequently, we are compelled to conclude that the trial court's sole basis for denying plaintiff's motion was erroneous. Nevertheless, because plaintiff forfeited her ability to challenge Rhodes' experts under subsection 2169(1)(a) by failing to timely invoke the statute, we hold that the trial court reached the right result, albeit for the wrong reason. *Cole v West Side Auto Employees Federal Credit Union,* 229 Mich App 639, 641; 583 NW2d 226 (1998).

---

[2] Although the Supreme Court examined the constitutionality of the 1986 version of § 2169, it stated that because "the 1986 and 1993 versions of the statute interact with MRE 702 in the same manner, our decision applies with equal force to the 1993 version," and noted that the "requirements contained in the 1993 version of the statute are even more restrictive than the 1986 version." *Id.* at 21, n 2.

The applicable standard of care and the breach of that standard by the defendant are essential elements in a medical malpractice case. *Weymers v Khera*, 454 Mich 639, 655; 563 NW2d 647 (1997). With limited exceptions, not relevant here, expert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard. *Locke v Pachtman*, 446 Mich 216, 230; 521 NW2d 786 (1994); *Carlton v St John Hosp*, 182 Mich App 166, 171; 451 NW2d 543 (1989). The applicable standard of care and the experts who will testify concerning that standard are so crucial to medical malpractice litigation that the Legislature requires both sides of a case to identify at least one expert at the commencement of the lawsuit. MCL 600.2912d(1); MSA 27A.2912(4)(1) requires the plaintiff or the plaintiff's attorney to file with the complaint "an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169."[3] Similarly, MCL 600.2912e(1); MSA 27A.2912(5)(1) mandates that the defendant or the defendant's attorney file, not later than ninety-one days after the plaintiff or the plaintiff's attorney files the affidavit of merit, "an affidavit of meritorious defense signed by a health professional who the defendant's attorney reasonably believes meets the

---

[3] The affidavit of merit must also contain a statement regarding, among other things, the applicable standard of practice or care and the health professional's opinion that the applicable standard of practice or care was breached by the defendant. MCL 600.2912d(1)(a), (b); MSA 27A.2912(4)(1)(a), (b).

requirements for an expert witness under section 2169."[4]

Section 2169, which is expressly referenced in the statutes requiring that at least one expert be identified at the outset of the litigation, contains strict requirements an expert must satisfy before the expert may give testimony concerning the standard of care. Subsection 2169(1) specifically provides that expert witnesses in medical malpractice cases *shall not* give testimony regarding the appropriate standard of practice or care unless the person is "licensed as a health professional," and meets the following practice and teaching requirements:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.
>
> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:
>
> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.
>
> (ii) The instruction of students in an accredited health professional school or accredited residency or clinical

---

[4] The affidavit of meritorious defense must also contain a statement regarding, among other things, the standard of practice or care that the defendant claims to be applicable to the action, and the manner in which the defendant claims it complied with that standard. MCL 600.2912e(1)(b), (c); MSA 27A.2912(5)(1)(b), (c).

research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(i) Active clinical practice as a general practitioner.

(ii) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

Thus, among other things, § 2169 requires that the expert's practice, teaching, and certification qualifications be precisely "matched" with those of the defendant. Absent a proper "match" the expert may not be presented in support of a litigant's case or defense. See *McDougall, supra* at 28 (the strict requirements set forth in § 2169 directly affect what testimonial evidence may be admitted in medical malpractice cases).

Given the fundamental role standard of care experts have in medical malpractice litigation, and particularly where § 2169 is identified in the statutes requiring both parties to list an expert at the commencement of the litigation, we hold that a party's failure to challenge an expert's basic qualifications under subsection 2169(1)(a) within a reasonable time after learning the expert's identity results in forfeiture of the issue. Michigan courts have repeatedly held that civil litigants will forfeit or waive issues, entire

causes of action, and even constitutional rights by failing to timely assert them.[5] See, e.g., *People v Grant*, 445 Mich 535, 551, n 29; 520 NW2d 123 (1994), quoting *Yakus v United States*, 321 US 414, 444; 64 S Ct 660; 88 L Ed 834 (1944) (" '[n]o procedural principle is more familiar to this Court than that a constitutional right may be forfeited in . . . civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it' ").[6]

In determining whether an issue or right is forfeited or waived because it is not timely asserted, our courts have considered both the diligence of the movant and the prejudice the nonmovant will sustain. For example, in *State Hwy Comm v Redmon*, 42 Mich App 642; 202 NW2d 527 (1972), this Court emphasized the defendant's dilatory conduct in affirming the trial court's decision denying the defendant's motion to strike the plaintiff's known expert witness. In *Redmon*, a condemnation case, the expert witness the plaintiff named in the pretrial summary suffered a

---

[5] We note that the concepts of forfeiture and waiver have been used interchangeably in the civil context. Our Supreme Court has recently clarified the distinction between "forfeiture" ("the failure to make the timely assertion of a right") and "waiver" ("the intentional relinquishment or abandonment of a known right"). *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000); *People v Carines*, 460 Mich 750, 762, n 7, 763; 597 NW2d 130 (1999), quoting *United States v Olano*, 507 US 725, 733; 113 S Ct 1770; 123 L Ed 2d 508 (1993). Plaintiff's conduct here is more appropriately characterized as a forfeiture.

[6] See also *In re Terry*, 240 Mich App 14, 26, n 5; 610 NW2d 563 (2000) ("[a]ny claim that the parent's rights under the ADA were violated must be raised well before a dispositional hearing regarding whether to terminate her parental rights, and the failure to timely raise the issue constitutes a waiver"); *In re Hubel*, 148 Mich App 696, 699; 384 NW2d 849 (1986) ("[i]n civil cases, the right to a jury trial is waived by a party's failure timely to demand a jury as prescribed by law"); *Thomas v Diamond*, 131 Mich App 108, 117; 346 NW2d 69 (1983) (the plaintiff waived any claim against the defendant for loss of evidence by her failure to raise that issue at any time before the verdict).

heart attack that rendered him unable to testify. *Id.* at 644. The plaintiff notified the defendant five months before trial of the expert's incapacitation, and fifty-six days before trial that substitution was required because of the witness' continuing disability. *Id.* After the jury was sworn, the defendant moved for the first time to exclude the plaintiff's substituted expert on grounds that the expert was not listed on the plaintiff's pretrial statement and that she had been informed of the plaintiff's intent to use the expert only after the period for such disclosure had expired. *Id.* In affirming the trial court's decision denying the defendant's motion to strike, this Court focused on the defendant's dilatory conduct and held:

> [T]he trial court carefully pointed out that at no time did counsel for defendant voice any objection to the court or opposing counsel on the subject of the substitution before trial. It is difficult to believe defendant raised objection at trial in good faith. By failing to raise timely objection to the proposed new expert witness, defendant gave the [plaintiff] every reason to believe that the substitution had been accepted and waived her right to object at trial.
>
> While the court's pretrial summary usually controls the subsequent course of litigation, the trial court is allowed discretionary power under GCR 1963, 301.3 to modify the pretrial summary at or before trial so as to avoid manifest injustice. We have consistently upheld this discretion of the trial court in the exclusion and admission of witnesses and evidence not listed at pretrial in the absence of clear abuse. *Defendant's counsel did not challenge the technicality of substituting witnesses after the time for disclosure had passed in a timely fashion, but rather sat back to raise the issue at trial. To paraphrase Justice Butzel in* People v Elliott, *322 Mich 313, 316 [33 NW2d 811] (1948), counsel cannot sit idly by and then for the first time interpose objections at trial. The [plaintiff] informed defendant "of the expert's name as soon as it was determined he would*

*be a witness and in sufficient time so that plaintiff*
*[defendant in this case] could have prepared to meet his*
*testimony, no matter what it might have been."* The facts
justified denial of defendant's motion. We therefore affirm
the trial court's ruling. [*Id.* at 645-646 (emphasis added).]

We also find instructive *Cremonte v Michigan State*
*Police*, 232 Mich App 240; 591 NW2d 261 (1999), and
similar cases that consider the prejudice to the non-
movant in determining whether the trial court abused
its discretion in allowing untimely amendments of the
pleadings. In *Cremonte*, the trial court granted the
plaintiff leave to amend his complaint midtrial to
include claims of race and gender discrimination. *Id.*
at 246-247. This Court reversed the jury verdict
because the amendment resulted in undue prejudice
to the defendant. *Id.* at 249. This Court reasoned that
the addition of the claims changed the nature of the
case, placed new factual questions at issue, changed
the import of evidence that had already been admit-
ted, and litigation had proceeded past the point where
the defendant could reasonably have been expected
to defend against the amended claims. *Id.* See also
*Weymers, supra* at 658-666; *Amburgey v Sauder*, 238
Mich App 228, 246-249; 605 NW2d 84 (1999); *Phinney*
*v Perlmutter*, 222 Mich App 513, 523; 564 NW2d 532
(1997). Cf. *Traver Lakes Community Maintenance*
*Ass'n v Douglas Co*, 224 Mich App 335, 344; 568
NW2d 847 (1997).

In our view, the principles set forth in these cases
apply with even greater force to the circumstances
presented here. Although plaintiff was aware of at
least one of Rhodes' proposed experts at or near the
beginning of the litigation, she waited until less than
twenty-eight days before trial—more than two years

into the litigation—to file her motion to strike Rhodes' experts. The record also reveals that the motion hearing was held the day before trial, that plaintiff deposed Rhodes almost a year before trial, that plaintiff had numerous means by way of discovery to determine the practice qualifications of Rhodes and his proposed experts well before the month of trial, and that, as the trial court noted, plaintiff's motion was both filed and heard in direct violation of its scheduling order. Moreover, the grounds for plaintiff's challenge did not involve the facts of the case, but were instead based on the claim that Rhodes' experts' specialties and board certifications did not "match" Rhodes' qualifications. Indeed, challenges to an opponent's expert under subsection 2169(1)(a) such as the one plaintiff advanced in this case generally do not require extensive discovery. A simple interrogatory question, a request for the expert's curriculum vitae, or other basic research would reveal whether the expert satisfies the licensure, specialty, or certification requirements set forth in subsection 2169(1)(a). In essence then, plaintiff attempted to either sabotage Rhodes by seeking to deplete the substance of his case with apparently no warning or force a lengthy and costly adjournment.

In addition, Rhodes would have been severely prejudiced had the trial court granted plaintiff's motion. As the trial court noted, striking the three expert witnesses Rhodes needed to address the fundamental standard-of-care issue would have restricted his ability to present a defense. In medical malpractice cases, standard of care experts can be difficult to locate and, once retained, require time to review the file and develop an opinion about the case. After the

expert formulates an opinion, the litigant is likely to
plan its entire litigation and discovery strategy around
it. It is patently unfair for a party to wait until the
brink of trial to challenge the basic qualifications of
the opponent's expert, thereby catching the opponent
surprised, unprepared, and at an extreme disadvan-
tage. In light of plaintiff's dilatory conduct in bringing
the motion to strike, and the prejudice Rhodes would
have sustained had the motion been granted, we con-
clude that plaintiff forfeited her right to challenge
Dr. Rhodes' expert witnesses under subsection
2169(1)(a).

III

Plaintiff also argues that the trial court erred in
refusing to allow her to use treatise evidence to ques-
tion her standard of care experts on direct examina-
tion in order to establish that their opinions were sup-
ported by "peer review publications" and met other
requirements of MCL 600.2955(1); MSA 27A.2955(1).
We disagree. The question whether subsection
2955(1) provides a basis for the admission of evi-
dence at trial presents a question of law that we
review de novo. *Lincoln v General Motors Corp*, 461
Mich 483, 489; 607 NW2d 73 (2000).

The primary goal of judicial interpretation of stat-
utes is to ascertain and give effect to the intent of the
Legislature. *Frankenmuth Mut Ins Co v Marlette
Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).
The first criterion in determining intent is the specific
language of the statute. *In re MCI Telecommunica-
tions Complaint*, 460 Mich 396, 411; 596 NW2d 164
(1999). Where statutory language is clear and unam-
biguous, judicial construction is neither required nor

permitted, and courts must apply the statute as written. *Rose Hill Center, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). Where reasonable minds can differ regarding the meaning of the statute, however, judicial construction is appropriate. *Id.*

The first part of MCL 600.2955(1); MSA 27A.2955(1) provides:

> In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless *the court* determines that the opinion is reliable and will assist the trier of fact. In making that determination, *the court shall examine the opinion and the basis for the opinion*, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, *and shall consider all of the following factors* . . . . [Emphasis added.]

Subsection 2955(1) proceeds to list the seven factors the court must consider in determining whether an expert's scientific opinion is reliable and will assist the trier of fact:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of

study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside the context of litigation.[7]

The Legislature enacted subsection 2955(1) in an apparent effort to codify the United States Supreme Court's holding in *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The plain language of the statute establishes the Legislature's intent to assign the *trial court* the role of determining, pursuant to the *Daubert* criteria, whether proposed scientific opinion is sufficiently reliable for jury consideration. Contrary to plaintiff's position, the statute is devoid of language suggesting that it is a rule of evidence, that it displaces the rules of evidence, or that it allows a party to establish her own witnesses' reliability through criteria the statute requires the trial court to employ. *In re Schnell*, 214 Mich App 304, 310; 543 NW2d 11 (1995) (courts may not speculate about the probable intent of the Legislature beyond the words expressed). We therefore conclude that a party may not use subsection 2955(1) as a basis to admit treatise evidence at trial, and a party's attempt to establish the reliability of its experts before the jury must be accomplished through, and in a manner consistent

---

[7] Section 2955 applies in medical malpractice cases. Subsection (3) provides:

In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169. [MCL 600.2955(3); MSA 27A.2955(3).]

with, the rules of evidence.[8] Accordingly, irrespective of whether plaintiff's experts' proposed evidence constituted "scientific opinion," the trial court's decision not to allow plaintiff's proposed line of questioning under subsection 2955(1) was proper. *Cole, supra* at 641.

Evaluating the trial court's ruling under the rules of evidence, we hold that it did not abuse its discretion in excluding the evidence in question. *LeGendre v Monroe Co*, 234 Mich App 708, 721; 600 NW2d 78 (1999). Plaintiff's only apparent purpose in offering the angina guidelines was to corroborate her experts' testimony that the decedent's stress test results required immediate hospitalization, thereby constituting inadmissible hearsay. MRE 801(c). Furthermore, the treatise materials were not admissible under MRE 707, which permits parties to introduce statements contained in published treatises, periodicals, or pamphlets "for impeachment purposes only." Plaintiff did not plan to impeach her own witnesses' testimony with the contested materials and sought instead to use them to bolster their testimony on direct examination.

Plaintiff relies on *Stachowiak v Subczynski*, 411 Mich 459; 307 NW2d 677 (1981), for the proposition that, notwithstanding MRE 707, treatise evidence may be admitted for nonhearsay purposes. In *Stachowiak*, a medical malpractice case, the defendant was permitted to use charts taken from medical texts as sources on which he relied in choosing a conservative course of treatment for the plaintiff. *Id.* at 462. The trial court instructed the jury that the charts were not

---

[8] Plaintiff was not attempting to place her evidence of reliability before the trial court but, instead, sought to use § 2955 as a vehicle to bolster her experts' testimony with corroborative medical evidence on direct examination—a use not contemplated by the statute.

admitted to prove the truth of the matter asserted, i.e., that the defendant's decision to undertake a conservative course of treatment was proper, but rather to explain why he proceeded as he did. *Id.* at 462, 466, n 7. In this case, plaintiff offered the guidelines to establish that her experts' opinions regarding the proper course of treatment for the decedent were accurate and that defendants' experts' opinions were inaccurate, not to explain why her experts proceeded in a particular manner. Consequently, plaintiff's reliance on *Stachowiak* and its progeny is misplaced.

Plaintiff raises two additional arguments regarding the trial court's restrictions on her use of learned treatises. Plaintiff contends that the trial court should have permitted her to use a treatise definition of unstable angina to rehabilitate her own expert witnesses after defendants used the same treatise to impeach her expert. Plaintiff also argues that the trial court's ruling on her use of the angina guidelines left her helpless when two defense experts resisted her efforts to impeach them by stating that the guidelines pertained to resting electrocardiograms rather than treadmill stress tests. Although plaintiff attempts to tie these two issues into her § 2955 claim, these are independent issues that should have been raised in her statement of questions presented. Consequently, these issues are not properly presented for appellate review. *Hillard v Schmidt,* 231 Mich App 316, 318; 586 NW2d 263 (1998).

Because we find plaintiff's issues to be without merit, we affirm the trial judgment for defendants. Accordingly, we need not address defendant Rhodes' issues on cross appeal.

Affirmed.