# Order

June 22, 2007

133178 & (79)(83)(84)(85)(88)(89)(95)(101)

**Michigan Supreme Court**
**Lansing, Michigan**

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

PHILLIP R. CHAPIN and BERNIE MAE
CHAPIN,
        Plaintiffs-Appellees,
v

                       SC: 133178
                       COA: 257917
                       Wayne CC: 03-324775-NP

A & L PARTS, INC., AMCHEM PRODUCTS,
AMERICAN STANDARD, BONDEX
INTERNATIONAL, INC., BORG WARNER
CORPORATION, CARRIER CORPORATION,
DAP, INC., DANA CORPORATION, DURO
DYNE CORPORATION, GEORGIA PACIFIC
CORPORATION, GOODRICH CORPORATION,
HERCULES CHEMICAL COMPANY,
INDIANHEAD INDUSTRIES, INC., KELSEY
HAYES COMPANY, McCORD CORPORATION,
METROPOLITAN LIFE INSURANCE COMPANY,
PARKER HANNIFIN CORPORATION, PNEUMO
ABEX CORPORATION, ROYAL INDUSTRIES,
INC., AII ACQUISITION CORPORATION,
CARQUEST AUTO PARTS OF PINCKNEY
MICHIGAN, INC., GEORGE FAN SERVICE,
INC. & ALL EQUIPMENT COMPANY,
STANDCO INDUSTRIES, INC., and MICHIGAN
MEDICAL COUNSEL,
        Defendants,
and

DAIMLERCHRYSLER CORPORATION,
        Defendant-Appellant,
and

FORD MOTOR COMPANY, GENERAL
MOTORS CORPORATION, and HONEYWELL,
INC., f/k/a ALLIED SIGNAL CORPORATION,
        Defendants-Appellees.

_____/

On order of the Court, the motion for immediate consideration is GRANTED. The motions for admission pro hac vice are GRANTED. The motions for leave to file briefs amicus curiae are GRANTED. The application for leave to appeal the January 30, 2007 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MARKMAN, J., dissents and states as follows:

I respectfully dissent. I would grant leave to appeal to determine whether the trial court acted properly under MRE 702 to "ensure that any expert testimony admitted at trial is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780 (2004). The trial court denied defendants' motion to exclude plaintiff's expert testimony in this asbestos products-liability action, and the Court of Appeals affirmed in a split decision with Judge O'Connell dissenting.

For the following reasons, I believe that this is a case of substantial significance that ought to be heard by this state's highest court: (a) the sole issue in this appeal concerns the effect of plaintiff's occupational exposure to asbestos, a product whose carcinogenic qualities have given rise to one of the most costly products-liability crises ever within our nation's legal system; (b) in particular, this appeal concerns occupational exposure to asbestos fibers contained in automotive brake linings and, therefore, directly implicates the nation's automobile industry in the asbestos products-liability crisis; (c) this appeal directly affects this Court's, and our Legislature's, efforts to replace the *Davis-Frye* test for assessing expert scientific testimony with the United States Supreme Court's *Daubert* test in MRE 702 and MCL 600.2955; (d) this appeal also affects this Court's efforts in adopting an administrative order concerning asbestos litigation in July of 2006 to ensure that asbestos litigants are subject to regular legal standards of due process; (e) our legal system's treatment of plaintiff's expert's testimony in this case will serve as precedent for how similar testimony will be treated in the substantial number of asbestos cases queued in this system; (f) the Court of Appeals published decision, in which the concurring judge held that the trial court's opinion "epitomized a proper exercise of discretion," will constitute controlling caselaw in this state concerning the responsibilities of trial courts in assessing expert scientific testimony under MRE 702; (g) the Wayne circuit judge in this case has been given individual responsibility for the asbestos docket of this state and, absent further review by this Court, he will indelibly have set the rules for expert scientific testimony in asbestos litigation, if not the rules for generally assessing expert scientific testimony in complex litigation; and (h) there is perhaps no state whose businesses and economy have been more severely harmed in recent years by the introduction of what later proved to be dubious scientific testimony than Michigan; given the potentially far-reaching impact of this case, it is essential that the science communicated by plaintiff's expert be thoroughly evaluated under the standards that we and the Legislature have set forth in MRE 702 and § 2955.

MRE 702 provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MCL 600.2955(1) provides:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

The United States Supreme Court has concluded under a similar federal court rule that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v Merrell Dow Pharmaceuticals*, *Inc,* 509 US 579, 589 (1993). This Court has concluded that MRE 702 "incorporate[s] *Daubert*'s standards," *Gilbert supra* at 781, and therefore that the judiciary must play a "gatekeeper

role" under this rule in the admission of expert scientific testimony. *Id.* at 780. "MRE 702 has imposed an obligation on the trial court to ensure that any expert testimony admitted at trial is reliable." *Id*. at 780. Indeed, "the trial court's obligation under MRE 702 is even stronger than that contemplated by [the federal rule] because Michigan's rule specifically provides that the court's determination is a precondition to admissibility." *Id.* at 780 n 46. "This gatekeeper role applies to *all stages* of expert analysis," and "mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from that data." *Id*. at 782 (emphasis in original). "Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation." *Id*. Moreover, § 2955 complements and reinforces MRE 702. "The Legislature enacted [§] 2955(1) in an apparent effort to codify the United States Supreme Court's holding in *Daubert*. . . ." *Greathouse v Rhodes*, 242 Mich App 221, 238 (2000), rev'd on other grounds 465 Mich 885 (2001). Application of these standards constitutes an additional aspect of the trial court's "gatekeeper role." *Clerc v Chippewa Co War Mem Hosp*, 477 Mich 1067-1068 (2007).

The lone issue on appeal concerns whether the trial court abused its discretion in concluding that plaintiff's expert's testimony satisfied the standards of MRE 702 and § 2955. It is not this Court's function to compare the parties' expert testimonies, but only to determine whether the trial court properly carried out its "gatekeeper role" in admitting plaintiff's expert's testimony. While it is the jury's responsibility to compare testimonies, it is the trial court's responsibility to determine whether such testimonies meet threshold standards for reliability sufficient to warrant their presentation to the jury.

In reviewing the trial court, I would grant leave to appeal to consider at least the following questions arising from the testimony of plaintiff's expert, Dr. Richard A. Lemen:

(1) Whether it is relevant in assessing the reliability of Dr. Lemen's testimony that there are 15 epidemiological studies that have failed to identify an increased risk of mesothelioma among brake mechanics and no epidemiological studies to the contrary.

(2) Whether the trial court abused its discretion in concluding that Dr. Lemen's opinion is "generally accepted" by the relevant scientific community when it is contrary to each of the 15 epidemiological studies that have been carried out concerning the relationship between asbestos exposure by brake mechanics and mesothelioma. Cf. *Nelson v Amer Sterilizer Co (On Remand)*, 223 Mich App 485, 488 (1997)("Where as here, no epidemiological study has found a statistically significant link . . . the expert testimony fails to exhibit the level of reliability required by MRE 702.").

(3) Whether the trial court sufficiently required Dr. Lemen to explain the shortcomings of existing epidemiological studies involving brake mechanics and mesothelioma as a precondition to considering epidemiological studies drawn from what are arguably significantly different occupations that necessarily require extrapolation.

(4) Whether the trial court abused its discretion in allowing Dr. Lemen in his conclusions to extrapolate from studies addressing higher levels of asbestos exposure to conditions involving lower levels of exposure.

(5) Whether, where the lowest level at which epidemiological studies have shown a causal relationship between asbestos exposure and mesothelioma allegedly is 9 fibers per cubic centimeter, the trial court abused its discretion in allowing Dr. Lemen to extrapolate from such studies to testify concerning an occupational environment in which exposure levels to asbestos are less than 0.1 fibers per cubic centimeter.

(6) Whether the trial court abused its discretion in allowing Dr. Lemen to testify concerning "peak" levels of asbestos exposure by brake mechanics exceeding 0.1 fibers per cubic centimeter without assessing whether only total asbestos exposure levels are relevant in establishing a relationship with mesothelioma.

(7) Whether the trial court abused its discretion in allowing Dr. Lemen in his conclusions to extrapolate from studies concerning types of asbestos fibers different from those to which brake mechanics are typically exposed.

(8) Whether the trial court abused its discretion in allowing Dr. Lemen in his conclusions to extrapolate from studies concerning sizes of asbestos fibers different from those to which brake mechanics are typically exposed.

(9) Whether the trial court abused its discretion in allowing Dr. Lemen in his conclusions to extrapolate data from occupations arguably involving different types of asbestos exposure, such as asbestos mining and factory work.

(10) Whether the trial court was required to assess the statistical methods, and the reliability of such methods, by which Dr. Lemen "extrapolated" from various asbestos studies.

(11) Whether the trial court was required to have Dr. Lemen identify all the specific asbestos studies from which his conclusions had been extrapolated.

(12) Whether, where *Craig v Oakwood Hosp*, 471 Mich 67, 93 (2004), counseled that "correlation is not causation," and that it constitutes a lapse in logic to "infer that A causes B from the mere fact that A and B occur together," the trial court was required to undertake adequate precautions to ensure that a jury would not be confused by these distinct concepts and thereby conflate relationship with causation.

(13) Whether the Court of Appeals abused its discretion in asserting that "studies have continued to confirm that asbestos causes mesothelioma, "*Chapin v A & L Parts, Inc,* 274 Mich App 122, 133 (2007), without distinguishing between levels of asbestos exposure, the nature of asbestos exposure, types and sizes of asbestos fibers, and the form of asbestos transmission.

(14) Whether the trial court abused its discretion in observing that "no court in the country has felt that it was necessary to hold a hearing to determine whether auto mechanics exposed to asbestos in brake linings are at a greater risk for mesothelioma."

(15) Whether there is an adequate scientific basis for Dr. Lemen's statement that "there is no known safe exposure to asbestos below which it would not cause mesothelioma," 274 Mich App at 135, and, if so, what that basis is.

(16) Whether Dr. Lemen's conclusion concerning a causal relationship between brake mechanics' exposure to asbestos and mesothelioma was scientifically reliable, where it was allegedly based on the presence of asbestos in automobile friction products and the connection in arguably different occupational environments between asbestos exposure and mesothelioma.

(17) Whether the trial court abused its discretion in asserting that there is affirmative evidence indicating a causal relationship between exposure to automobile friction products and mesothelioma, where defendants allege that the only support for this proposition consists of one article that was never introduced into evidence and a second article — Dr. Lemen's — that did not assert this proposition but merely concluded that the evidence "by no means exonerates the brake mechanic from being susceptible to a causal relationship between asbestos exposure and mesothelioma."

(18) Whether, where *Gilbert*, *supra* at 789, asserts that the trial court must take care not to treat an issue of reliability of expert testimony as a matter of "weight," rather than "admissibility," the trial court here abused its discretion in enabling a jury to draw conclusions concerning the existence of a scientifically valid causal relationship between brake mechanics' exposure to asbestos and mesothelioma.

(19) Whether, where *Gilbert*, *supra* at 782, asserts that "[c]areful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation," the trial court here abused its discretion in enabling a jury to draw conclusions concerning the existence of a scientifically valid causal relationship between brake mechanics' exposure to asbestos and mesothelioma.

(20) Whether the trial court properly assumed the relevance of precautionary warnings by the government concerning safe levels of asbestos exposure where plaintiff's legal obligation is to prove a causal relationship between brake mechanics' exposure to asbestos and mesothelioma.

(21) Whether, where *Gilbert*, *supra* at 783, counsels that the trial court must take care under MRE 702 to avoid a "yawning 'analytical gap'" between an expert's testimony and the underlying data, the trial court adequately undertook to avoid such a gap in this case.

(22) Whether, in view of *Gilbert*'s admonition, *supra* at 782, that the court's "gatekeeper role" under MRE 702 "applies to all *stages* of expert analysis," the trial court "searchingly" attempted to ensure that the scientific method was adhered to at every linkage point in Dr. Lemen's argument and that both his data and his intermediate and final conclusions drawn from such data were reliable.

(23) Whether it is significant, in terms of the MRE 702 evaluation, that an expert witness would assert concerning the causal relationship between brake mechanic work

and mesothelioma, "[T]he answer is that time will tell . . . and we will know an answer probably at some point in time. But we're not going to know that answer right now . . . what I am saying is that there is adequate information in my opinion in the literature to show that brake repair workers have the potential to be exposed to concentrations of asbestos that can cause disease."

(24) Whether it is significant, in terms of the MRE 702 evaluation, that an expert witness would respond to a question concerning whether there is a causal relationship between exposure to small asbestos fibers and mesothelioma, "I cannot state to a reasonable degree of scientific certainty that they do or do not."

(25) Whether, where *Craig*, *supra* at 93, states that "the connection between the defendant's negligent conduct and the plaintiff's injuries [cannot be] entirely speculative," and that plaintiff cannot satisfy his or her burden "by showing only that the defendant *may* have caused his injuries," *id*. at 87, plaintiff's expert's testimony was sufficient to satisfy MRE 702.

(26) Whether it is relevant that Dr. Lemen's written work, which did not apparently conclude that mesothelioma is caused by long-term exposure to automotive friction products, was peer-reviewed, whereas his actual testimony, which concluded that such a causal relationship existed, was not peer-reviewed.

(27) Whether the Court of Appeals misapprehended the trial court's responsibilities in concluding that the "gatekeeper" role "does not require the trial court to search for absolute truth," and whether it is nonetheless the role of the "gatekeeper" to ensure that the jury is presented only with sufficiently reliable scientific evidence to assist the latter in determining "absolute truth."

(28) Whether the trial court impermissibly shifted the burden of proof among the parties by commenting on the alleged *absence* of evidence concerning a causal relationship between asbestos exposure and mesothelioma.

(29) Whether, where it appears that at least some forms of mesothelioma are idiopathic, there is a burden on an expert witness to address why a party's mesothelioma was not of such a nature.

(30) Whether epidemiological studies are merely the "best evidence" for establishing causation between asbestos exposure and mesothelioma, as acknowledged by plaintiff's expert, or constitute the "only way" of establishing such causation, as argued by defendant's expert.

(31) Whether the trial court misapprehended its responsibilities under MRE 702 and abused its discretion when it asserted, "It is not really important to have an

epidemiological study to determine whether the risk of cancer is increased by asbestos exposure in every occupation. What is important to know is the permissible exposure level and to make a determination whether in that work or occupation an employee is exposed to asbestos in excess of the permissible exposure levels."

(32) Whether, in "assisting the trier of fact" in the exercise of its "gatekeeper role," there are any responsibilities imposed on the trial court that go beyond ensuring the reliability of evidence, such as, for example, ensuring the logic or clarity of its presentation to the jury.

(33) Whether the trial court and the Court of Appeals majority clearly recognized that the *Davis-Frye* standard of evaluating expert scientific evidence had been superseded in this state by the *Daubert* standard.

I do not purport to know the answers to each of these questions. But I do believe that it is essential to the fairness and integrity of the justice system that these questions be reviewed and answered. These questions go to the heart of the differences between the *Davis-Frye* and *Daubert* tests. Defendants have raised legitimate questions concerning the application of MRE 702 and § 2955. Therefore, I would grant leave to appeal.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 22, 2007

Clerk