COLE v WEST SIDE AUTO EMPLOYEES FEDERAL CREDIT UNION

Docket No. 199614. Submitted January 7, 1998, at Lansing. Decided May 19, 1998, at 9:05 A.M.

Guy Cole brought an action in the Genesee Circuit Court against West Side Auto Employees Federal Credit Union, alleging that his discharge from employment by the defendant constituted unlawful age discrimination under the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548 *et seq.*, and unlawful discrimination based on handicap (alcoholism) under the Michigan Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The plaintiff's employment had been terminable for just cause only, and an employee handbook had provided for arbitration as the exclusive means by which a discharged employee could challenge the termination as violative of the contractual agreement for discharge for just cause only or as violative of statutes prohibiting employment discrimination. Arbitration that resulted in a decision in favor of the defendant had preceded the plaintiff's action. The court, Robert M. Ransom, J., granted summary disposition for the defendant, ruling alternatively that the plaintiff was obligated to submit his discrimination claims to arbitration or that collateral estoppel applied to prevent the plaintiff from pursuing his discrimination claims in court. The plaintiff appealed.

The Court of Appeals *held*:

1. Factual findings made by an arbitrator after a proper arbitration proceeding are conclusive in a later-filed civil suit between the same parties, including a situation in which the earlier arbitration involved a contractually based wrongful discharge claim and the later lawsuit involves a claim that the discharge violated one or more state civil rights statutes.

2. The trial court did not err in summarily dismissing the claim of employment discrimination based on handicap. The Michigan Handicappers' Civil Rights Act expressly excludes alcoholism as a handicap with respect to employment discrimination where the condition prevents the employee from performing his duties. Here, the arbitrator found that the plaintiff's job performance was detrimentally affected by his drinking.

3. The trial court did not err in summarily dismissing the claim of employment discrimination based on age. The plaintiff could not establish a prima facie case of age discrimination because he could not show that he was qualified for his position in view of the arbitrator's finding that the plaintiff was unable to handle the supervisory and public relations responsibilities of his job.

4. The arbitration procedure in this case encompassed any claims of wrongful discharge, including statutorily based employment discrimination claims. Accordingly, collateral estoppel properly applies to preclude the plaintiff from pursuing his civil rights claims in court.

Affirmed.

1. JUDGMENTS — COLLATERAL ESTOPPEL — ARBITRATION.

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding; this principle likewise applies to factual determinations made during grievance hearings or arbitration proceedings.

2. CIVIL RIGHTS — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — ALCOHOLISM.

Alcoholism is not a handicap for which employment discrimination is prohibited by the Michigan Handicappers' Civil Rights Act where the condition prevents the employee from performing the employee's duties (MCL 37.1103[f][ii]; MSA 3.550[103][f][ii]).

3. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — AGE — PRIMA FACIE CASE.

An essential element of a prima facie case of age discrimination is a showing by the plaintiff that the plaintiff was qualified for the position at issue (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Law Offices of Dean T. Yeotis* (by *Daniel J. Langdon*), for the plaintiff.

*Bower, Anderson, Radabaugh, Milton & Brown, P.C.* (by *Thomas R. Bowen* and *Evelyn C. Tombers*), and *Van Suilichem & Brown, P.C.* (by *Craig S. Schwartz*), for the defendant.

Before: FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ.

PER CURIAM. Plaintiff Guy Cole appeals as of right an order granting summary disposition to defendant West Side Auto Employees Federal Credit Union on his claims of age discrimination in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*, and discrimination based on his alleged handicap of alcoholism in violation of the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* The trial court based its grant of summary disposition on the credit union's motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). Although we cannot approve all aspects of the trial court's reasoning, we affirm its decision.[1]

## I. FACTS

Cole began working for the credit union sometime around October 1971 and eventually became the chief executive officer (CEO) of the credit union. The credit union discharged Cole on or about March 26, 1993. Following his discharge by the credit union, Cole challenged his discharge as wrongful under the credit union's Termination and Grievance Policy.[2] After an arbitration proceeding, the arbitrator upheld Cole's discharge as being based on just cause. Following the arbitrator's decision, Cole filed this lawsuit. The trial court granted summary disposition to the credit union on two grounds. First, the trial court held that Cole was obligated to submit the claims in this suit to binding arbitration pursuant to the credit union's Ter-

---

[1] It almost does not bear repeating that we do not reverse the decision of a trial court where it reaches the right result for a wrong reason. See, e.g., *General Aviation, Inc v Capital Region Airport Authority (On Remand)*, 224 Mich App 710, 716; 569 NW2d 883 (1997).

[2] In light of our analysis, we consider it unnecessary to set forth in detail many of the unpleasant facts underlying Cole's discharge.

mination and Grievance Policy (as opposed to filing suit in a court of law). Alternatively, the trial court noted that, assuming Cole was not obligated to submit this dispute to binding arbitration, he voluntarily did so. The trial court stated that to allow Cole to relitigate these issues "would be to give him an opportunity certainly not within the reasonable expectations of the parties at the time of the contract."

Further, the trial court indicated that the doctrine of collateral estoppel, which applies to factual determinations made during an arbitration proceeding, barred relitigation of the issues underlying this case. The trial court concluded that the arbitrator's factual findings, which it regarded as conclusive, precluded Cole from establishing the necessary elements of either of his discrimination claims. In this appeal, Cole argues that the trial court erred in holding that he was obligated to submit his statutory discrimination claims to binding arbitration and, alternatively, that he was collaterally estopped from pursuing those claims in the trial court.

Pursuant to an employee handbook issued by the credit union for its salaried employees, Cole was assured that he would not be discharged except for just cause. The employee handbook also provided for grievance and arbitration procedures applicable to salaried employees who were discharged by the credit union. The procedures purportedly were to be the only method allowed for such employees to challenge an alleged wrongful termination, expressly including employment discrimination claims. The handbook stated:

> These procedures shall apply to any and all disputes concerning the termination of salaried employees, *including*

*employment discrimination claims*, and shall be the sole and exclusive remedy for any salaried employee claiming wrongful termination from employment with the Credit Union. [Emphasis supplied.]

The arbitration procedure to be followed under the employee handbook involved the selection of a neutral arbitrator in accordance with the procedures of the American Arbitration Association.

II. ARBITRATION UNDER *RUSHTON v MEIJER, INC (ON REMAND)*

Under *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156; 570 NW2d 271 (1997), we must reject the portion of the trial court's analysis that concluded that Cole was obligated to submit his statutory claims of handicap and age discrimination to arbitration.[3]

---

[3] We note that the panel in *Rembert v Ryan's Family Steak House, Inc*, 226 Mich App 821, 822-823 (1997) followed the majority opinion in *Rushton* only because it was required to do so by MCR 7.215(H). The *Rembert* panel disagreed with the conclusion in *Rushton* that all employment contracts to arbitrate prospective civil rights claims violate public policy. *Rembert, supra* at 823. Rather, the *Rembert* panel would have adopted then Judge (now Justice) TAYLOR's dissent in *Rushton* except for what it regarded as "the unnecessary commentary contained in the footnotes" of that dissent. *Rembert, supra* at 823 & n 2. We note that the procedure has been initiated for a seven-judge panel of this Court to be convened in *Rembert* to resolve the conflicting views of the *Rushton* majority and the prior three-judge panel in *Rembert*. Accordingly, we note that, at this point, *Rushton* remains binding precedent upon this panel, and apply it accordingly. In fairness to the trial court, we note that its decision predated *Rushton*. We do not criticize the trial court for its analysis of this difficult issue, which has produced a strong difference of opinion within this Court.

We also note that, under the unanimous view of the Michigan Supreme Court in *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405; 550 NW2d 243 (1996), a provision in an employee handbook that purports to require arbitration of employment discrimination claims while the handbook only provides for at-will employment is unenforceable. See *id.* at 413-414 (CAVANAGH, J., joined by LEVIN and MALLETT, JJ.), 438 (BOYLE, J., joined by BRICKLEY, C.J., and RILEY and WEAVER, JJ., expression of majority of justices agreeing with this part of Justice CAVANAGH's minority lead opinion).

The *Rushton* majority summarized its pertinent holding as follows:

> Accordingly, we hold that Meijer cannot require its employees, as a condition of employment, to waive *prospectively* their right to pursue direct and immediate review of civil rights claims in a judicial forum. The provision of the parties' private employment contract requiring plaintiff, a nonunion employee, to exhaust the termination appeal procedure, including binding arbitration, before filing a lawsuit in the circuit court, is void as it relates to her gender discrimination claim under Michigan law. [*Rushton, supra* at 170 (emphasis supplied).]

Even more pointedly, the *Rushton* majority declared, "Michigan's declared public policy entitling a state civil rights plaintiff to direct and immediate review of such claims in the circuit court cannot be abrogated by contract." *Id.* at 165. If Cole had not pursued the credit union's alternative dispute resolution (ADR) procedure to the point of arbitration, then clearly under *Rushton* Cole would have had a right to reject the ADR procedure with regard to his civil rights claims against the credit union under Michigan statutes by proceeding with a complaint against the credit union in the trial court.

However, this case is materially distinguishable from *Rushton*. Cole decided to proceed to binding arbitration under the credit union's ADR procedure *after* he had been discharged. The *Rushton* majority concluded that an employer could not require an employee, as a condition of employment, to prospectively waive the right to pursue civil rights claims

under a state statute in a judicial forum. *Id.* at 170.[4] However, this concern is inapplicable with regard to a former employee, such as Cole, whom the employer already has discharged. Indeed, the *Rushton* majority quoted with agreement the following comments reflecting the view of three justices of the Michigan Supreme Court in *Heurtebise v Reliable Business Computers, Inc,* 452 Mich 405, 438; 550 NW2d 243 (1996) (Cavanagh, J., joined by Levin and Mallett, JJ.):

> Finally, I would assert that I am not backing away from the public policy favoring alternative means of dispute resolution. *For aggrieved individuals seeking to pursue remedies for claims that have already accrued, arbitration may present a quicker and cheaper means of receiving relief, and I fully support the parties' voluntary intent in those cases.* I would limit this opinion to the arbitration agreements in employment contracts entered into before any claim for unlawful discrimination has accrued. [*Rushton, supra* at 169-170 (emphasis supplied).]

Accordingly, we conclude that *Rushton* does not apply here. We hold that a discharged employee who alleges that he was wrongly discharged and who voluntarily submits to an arbitration procedure is barred in a lawsuit filed *after* the arbitration decision from seeking a factual finding different from that which was found in the arbitration decision.[5]

---

[4] Accordingly, we express no opinion regarding any situation that may arise in which an employee alleges discrimination in violation of a state civil rights statute other than outright discharge from employment with the involved employer and the employee remains employed by the employer at the time of the dispute.

[5] However, other case law establishes that an arbitration award may be vacated by a court if (1) it was procured by corruption, fraud, or other undue means, (2) there was evident partiality or corruption by an arbitrator or misconduct prejudicing a party's rights, (3) the arbitrator exceeded

As noted above, the *Rushton* majority concluded that a provision in an employment contract purporting to prospectively require arbitration of civil rights claims under state statutes is unenforceable. However, the *Rushton* panel unanimously concluded that a provision of an employee handbook requiring arbitration of employment disputes is enforceable with regard to a contractually based employment dispute when the employee handbook also provides for just-cause employment. *Rushton, supra* at 161-164 (majority opinion), 170 (TAYLOR, J., concurring in this part of the majority opinion). Because the plaintiff in *Rushton* never proceeded to arbitration under the employer's ADR procedure in that case, *id.* at 159-160, the *Rushton* panel did not consider whether factual findings by an arbitrator in a proceeding in which a discharged employee alleged that the discharge violated contractual just-cause provisions would be conclusive if the employee thereafter filed a lawsuit alleging that the discharge violated one or more state civil rights statutes. Nevertheless, in *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995), this Court stated:

---

granted powers, or (4) the arbitrator refused to postpone the hearing on a showing of sufficient cause, refused to hear material evidence, or otherwise conducted the hearing to substantially prejudice a party's rights. *Dohanyos v Detrex Corp (After Remand)*, 217 Mich App 171, 174-175; 550 NW2d 608 (1996).

Also, an arbitration decision may be modified or corrected by a court if (1) there is an evident miscalculation of figures or an evident mistake in the description of a person, a thing, or property referred to in the award, (2) the arbitrator has made an award regarding a matter not submitted to arbitration and the award may be corrected without affecting the merits of the decision regarding submitted issues, or (3) the award is imperfect in a matter of form that does not affect the merits of the controversy. *Id.* at 175. Cole has advanced no such claims.

> Collateral estoppel precludes relitigation of an issue in a subsequent, *different cause of action between the same parties* when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding. *This principle likewise applies to factual determinations made during grievance hearings or arbitration proceedings.* [Citations omitted; emphasis supplied.]

On the basis of the plain language of *Porter*, we conclude that factual findings made by an arbitrator after a proper arbitration proceeding are conclusive in a later-filed civil suit between the same parties, including a situation in which the earlier arbitration involved a contractually based wrongful discharge claim and the later lawsuit involves a claim that the employee's discharge violated one or more state civil rights statutes.

### III. DISCRIMINATION CLAIM

In this case, Cole alleged that his discharge involved age discrimination contrary to the Civil Rights Act and handicap discrimination contrary to the HCRA. Cole based his claim of handicap discrimination solely on the alleged handicap of alcoholism. However, "The HCRA expressly excludes alcoholism as a handicap with respect to employment discrimination under Article 2 where the condition prevents the employee from performing his duties. MCL 37.1103(f)(ii); MSA 3.550(103)(f)(ii)." *Gazette v Pontiac*, 212 Mich App 162, 168-169; 536 NW2d 854 (1995).[6] The arbitrator in his written opinion stated: "I

---

[6] MCL 37.1103(f)(ii); MSA 3.550(103)(f)(ii) provides:

For purposes of article 2, "handicap" does not include either of the following:

find that [Cole's] job performance was detrimentally affected by his excessive drinking during the strike."[7] The arbitrator also recounted various ways in which Cole's intoxication detrimentally affected his job performance and reflected negatively on the credit union. Accordingly, we conclude that, as a matter of law, if Cole indeed suffered from alcoholism, under the arbitrator's conclusive factual findings, *Porter*, *supra* at 485, this did not constitute a handicap that could form the basis of a claim of illegal employment discrimination under the HCRA because it prevented Cole from properly performing job duties. Thus, the trial court correctly granted summary disposition to the credit union with regard to Cole's claim of handicap discrimination.

With regard to Cole's claim of age discrimination, he presented no direct evidence of age-based animus on the part of the credit union. Accordingly, to avoid a grant of summary disposition under MCR 2.116(C)(10), Cole had to establish a "prima facie case" of age discrimination on the basis of circumstantial evidence. *Harrison v Olde Financial Corp*, 225 Mich App 601, 606-609; 572 NW2d 679 (1997). One essential aspect of such a prima facie case in an age discrimination case based on discharge from employment is that the plaintiff was qualified for the position. *Meagher v Wayne State Univ*, 222 Mich App 700,

* * *

[:] (ii) A determinable physical or mental characteristic caused by the use of an alcoholic liquor by that individual, if that physical or mental characteristic prevents that individual from performing the duties of his or her job.

[7] This referred to a strike by certain union-represented employees of the credit union that occurred while Cole was the CEO of the credit union.

710-711; 565 NW2d 401 (1997). Arguably, the arbitrator's finding that Cole's discharge was "based upon just cause" would necessarily encompass a factual determination that he was not qualified for his position as CEO of the credit union at the time of the discharge. However, assuming for purposes of discussion that a finding of just cause for termination of employment does not automatically amount to a finding that an employee is unqualified for a position, the factual findings contained in the following paragraph of the arbitrator's decision require a conclusion that Cole was not qualified for his CEO position at the time of discharge:

> It is acknowledged that [Cole] accomplished much on behalf of the credit union during his long tenure supervising the construction of a $4.5 million building and expanding assets from $70 to $110 million. (TR 446). But in my view *his effectiveness as a Chief Operating Officer is substantially impugned* by the above incidents of misconduct which constitute sufficient evidence of just cause to warrant sustaining the Employer's action of discharge. As is often the case it took a traumatic event, such as the hit and run incident, to alert [Cole] to the fact of his disease of alcoholism. *But by that time much damage had been sustained by the credit union relative to [Cole's] relationship with its other employees and to the public. Such damage cannot be overcome by the arguable fact that [Cole] now has his alcoholism condition under control.* [Emphasis supplied.]

According to the arbitrator's conclusive factual findings, *Porter, supra* at 485, the damage to Cole's relationship with other employees of the credit union and the public could not be overcome. Obviously, this requires a conclusion that Cole was, at the time of his discharge, not qualified to handle the supervisory and

public relations responsibilities inherent in being the CEO of the credit union. Thus, the trial court correctly granted summary disposition to the credit union with respect to the age discrimination claim.

IV. COLLATERAL ESTOPPEL

While Cole invokes *Florence v Dep't of Social Services*, 215 Mich App 211; 544 NW2d 723 (1996), in support of his position that the trial court erred in holding that he was collaterally estopped from pursuing his civil rights claims in a judicial forum, that case involving a union-represented employee is inapposite. In *Florence*, the defendant hired the plaintiff despite knowing of her severe hearing problem. *Id.* at 212. The plaintiff asserted that the defendant refused repeated, reasonable requests to accommodate her handicap during a training program. *Id.* After her training, the plaintiff was unable to perform her job adequately and was discharged. *Id.* at 212-213. After the discharge, the labor union that represented the plaintiff filed a grievance that resulted in a settlement agreement between the union and the defendant employer in which the defendant changed its records to indicate that the plaintiff had resigned. *Id.* at 213. The plaintiff did not participate in the settlement proceedings or sign the agreement. *Id.* Thereafter, the plaintiff filed a lawsuit alleging wrongful termination contrary to the HCRA, but the trial court granted summary disposition with one ground being that the suit was barred by the grievance settlement. *Id.* at 212-213.

This Court concluded that the pursuit and settlement of the plaintiff's contractual grievances by the

union did not preclude the plaintiff from bringing suit in her own right for the alleged violation of the HCRA:

> Plaintiff argues that the settlement agreement between plaintiff's union and defendant did not bar an action based on her statutory civil rights. We agree. . . .
>
> *Although a union speaks for its members, its duty is to make and uphold the terms of a collective bargaining agreement for its members. However, a union does not have a duty to pursue for its members rights possessed independent of the collective bargaining agreement.*
>
> *Here, it is true that plaintiff's union reached an agreement with defendant concerning plaintiff's contractual grievance. However, plaintiff's claims in this suit do not arise out of the collective bargaining agreement.* It is an "incontestable," "black-letter statement of law" that employees in Michigan have " 'an independent, nonnegotiable right not to be discriminated against on the basis of handicap.' " Similarly, claims under the CRA [the state Civil Rights Act] concern nonnegotiable state rights that are entirely independent of the collective bargaining agreement. Accordingly, plaintiff has a right to proceed in this case on her claims pursuant to the HCRA and the CRA regardless of the agreement that her union signed with respect to her contractual grievances. [*Id.* at 213-214 (citations omitted; emphasis supplied).]

The reasoning of *Florence* is inapplicable to this case. It is evident that the grievance procedure in *Florence* was limited to contractual grievances. Accordingly, in pursuing the contractual grievance in *Florence*, the union was not in a position to concern itself with adequately representing the employee's interests with regard to claims based on statutory rights bestowed independently of any collective bargaining agreement. In contrast, the arbitration procedure in this case encompassed any claims of wrongful termination, including statutorily based employment

discrimination claims. Therefore, Cole was in a position to pursue his claims of age and handicap discrimination in violation of state statutes in the arbitration proceeding. Thus, *Florence* is not pertinent to deciding this case.

### V. CONCLUSION

In sum, we conclude that, while Cole was not obligated to submit his statutory civil rights claims to the arbitration procedure provided for by the employee handbook, the factual findings of the arbitrator were conclusive in this suit that was filed *after* the arbitrator's decision. Those factual findings warranted summary disposition to the Credit Union because they precluded Cole from establishing his claims of handicap or age discrimination.

Affirmed. The credit union, being the prevailing party, may tax costs pursuant to MCR 7.219.