NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  17a0473n.06

No. 16-2228

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

W.J. O'NEIL COMPANY,

      Plaintiff-Appellant,

v.

SHEPLEY, BULFINCH,
RICHARDSON & ABBOTT, INC.;
SMITH SECKMAN REID, INC.,

      Defendants-Appellees.

FILED
Aug 15, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    SILER, CLAY, and McKEAGUE, Circuit Judges.

      **CLAY, Circuit Judge.** Plaintiff W.J. O'Neil Company ("WJO"), a mechanical contractor, filed a lawsuit against Defendants Shepley, Bulfinch, Richardson & Abbot, Inc. ("SBRA") and Smith Seckman Reid, Inc. ("SSR"), (collectively "Defendants"), seeking recompense for financial losses it suffered due to delays in the construction of a new cardiovascular center at the University of Michigan hospital. WJO asserted the following three causes of actions: (1) negligence; (2) innocent misrepresentation; (3) and tortious interference with a contract. In response, Defendants filed parallel motions for summary judgment and judgment on the pleadings, which the district court granted.[1] In so doing, the court held that

---

[1] Although the district court stated that it was treating Defendants' motions as a motion for judgment on the pleadings, the district court relied upon information submitted outside the pleadings. Accordingly, we treat the motion as one requesting summary judgment. *Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 616 (6th Cir. 2013) ("When a district court considers matters outside the pleadings in a Rule 12(b)(6) motion and issues the functional equivalent of a Rule 56 ruling, we may treat the Rule 12 dismissal as a grant of summary judgment in the movant's favor.") (internal citations omitted).

WJO's action was barred by issue preclusion; and that alternatively, the action failed on the merits. WJO now appeals. Because we agree with the district court's conclusion to dismiss the case based on issue preclusion, we **AFFIRM** the decision of the district court without reaching the merits of WJO's claims.

## BACKGROUND

### I. Factual background

The University of Michigan in Ann Arbor ("UM") commissioned a project to build a Cardiovascular Center ("CVC"). As designed and constructed, CVC is a 350,000 square foot structure, which connects to the existing University of Michigan Hospital. The total cost of the project, which was completed in the spring of 2007, exceeded $200 million. In the fall of 2003, UM engaged SBRA, a Massachusetts corporation, to serve as the architect of record in the CVC project. Shortly thereafter, SBRA retained SSR, a Tennessee corporation, to provide design services related to the mechanical, electrical, and plumbing systems. Separately, UM entered into an agreement with Barton Marlow Company ("BMC") to serve as the construction manager for the CVC project.

Pursuant to the designs provided by Defendants, several mechanical firms were invited to bid upon the CVC project to supply and install mechanical and plumbing work, including water piping, natural and medical gas piping, and exhaust ducts and related components. On August 24, 2004, a total of four mechanical bids were received. WJO submitted the lowest bid for the mechanical contractor work, totaling approximately $23 million dollars and was awarded the project. It entered into a contract with BMC on November 8, 2014. WJO never contracted directly with SBRA or SSR.

The contract between WJO and BMC included a provision calling for a dispute resolution process. Any dispute that could not be resolved in an orderly fashion was to be submitted to a mediator, and subsequently to arbitration. The terms and conditions of the contract incorporated various provisions from the contract between BMC and UM. Additionally, UM's contract with SBRA and SBRA's contract with SSR contained similar dispute resolution and indemnity provisions so that all claims between the parties were intertwined.

WJO performed the installation work pursuant to the design drawings and specifications prepared by Defendants. Numerous design errors plagued the project, and fundamentally changed the scope and nature of WJO's tasks. As a consequence, WJO suffered financial losses arising from the performance of its contract.

**Washtenaw Circuit Court Litigation**

Notwithstanding the dispute resolution procedure set forth in the contract, WJO filed a lawsuit in Washtenaw Circuit Court, alleging breach of contract, abandonment and other charges against BMC, along with one count of professional negligence against SBRA. On August 3, 2007, WJO filed an amended complaint naming SSR as a defendant. BMC moved to dismiss the case pursuant to the contract terms requiring binding arbitration and on December 28, 2006, the circuit court dismissed BMC. In turn, WJO filed its own demand for arbitration against BMC on February 15, 2007. The circuit court stayed WJO's claims against Defendants and ordered the parties to appear for status updates every six months during the pendency of the arbitration. On April 22, 2009, the circuit court dismissed WJO's claims against Defendants without prejudice.

**Arbitration**

BMC subsequently filed a demand for arbitration against UM seeking indemnity for the alleged design errors. The two arbitrations—one between BMC and WJO, and the second between BMC and UM—were consolidated. Once the arbitrations were consolidated, UM filed demands against SBRA seeking indemnity and SBRA filed a demand for indemnity against SSR. WJO opposed consolidation. Although the two arbitrations were consolidated and all four parties participated, WJO only alleged contract claims against BMC. It never asserted, nor agreed to arbitrate, the claims against SBRA and SSR. The consolidated arbitrations were heard before a panel.

The arbitration hearing began on December 1, 2009 and concluded on August 27, 2010. Over that time period, the panel heard testimony from a number of experts and received over 1,400 exhibits. Neither party disputes the comprehensive nature of the arbitration. WJO's claims were premised upon putative defects in the design and specifications developed by SBRA and SSR. For example, WJO contended that "the drawings lacked sufficient cross-sections for the mechanical work." Additionally, "the design called for long horizontal runs of 6" and 8" diameter pipe with required pitch. This design error made it impossible for [WJO] to install its work as designed." So while WJO proclaimed throughout the arbitration that it was only seeking damages from BMC for failing to properly supervise the design work of Defendants, WJO repeatedly opined upon the inadequacy of Defendants' performance.

During the course of the arbitration, WJO alleged that it suffered over $19 million worth of damages, including consequential damages of lost profits and other indirect losses, such as financial losses it suffered from its inability to bid on projects unrelated to CVC. As acknowledged by one of WJO's damages experts, it arrived at the figure of $19 million in

4

damages by aggregating all its losses. WJO made no effort to apportion its damages based on the relative fault of either BMC or the Defendants. On December 7, 2010, the panel issued an interim award in favor of WJO totaling $2,432,184.20 plus interest. The panel concluded that BMC breached its contract with WJO as a result of the project plans being more difficult, time consuming, and expensive to coordinate than reasonably anticipated and expected by WJO when it signed its contract with BMC.

Proceeding further, the panel stated that "WJO also asserted various claims for damages for consequential damages, lost profits, and other indirect alleged losses." (R. 19-26, Interim Arbitration Award, Page ID # 1134). With respect to this claim, the panel stated:

> WJO claims, for instance, that it lost profits that WJO may have earned on Projects it did not bid, was not allowed to bid, or was not awarded a contract. The contract between WJO and BMC contains a waiver of consequential damages. As noted, the Arbitrators do not find that the contract was abandoned. Hence, the Arbitrators find that these damage limitations in the contract are fully in effect and enforceable and all claims for consequential and other indirect alleged losses are denied. *In addition to the contract waiver, the Arbitrators note further that the evidence presented by WJO on these issues was too speculative to support the claims and is not supported legally or factually.* Accordingly, the claim for consequential damages is denied and WJO is awarded 0.00 for consequential damages and alleged lost profits.

(*Id.*) (emphasis added). On February 11, 2011, the panel issued its final award of $3,276,958 in favor of WJO which included interest and attorney fees.

## II.     Procedural History

On May 9, 2011, WJO filed a complaint in the Eastern District of Michigan against Defendants seeking recovery of tort damages arising in connection with the financial losses it suffered during its work on the project. The complaint asserted three causes of action against Defendants: (1) negligence (Count I and II); (2) innocent misrepresentation (Count III); and (3) tortious interference with a contract (Count IV). On September 30, 2011, Defendants filed a

joint motion for summary judgment and/or dismissal on the pleadings on several grounds. These grounds included: (1) res judicata; (2) collateral estoppel; (3) failure to state a claim; (4) claims were barred by Michigan's Economic Loss Doctrine. The district court granted summary judgment on res judicata grounds.

WJO appealed and a panel of this Court reversed, holding that an arbitration award cannot bar a claim that the arbitrator lacked authority to decide. This Court concluded that because WJO never agreed to arbitrate its tort claims, the previous arbitration could not serve as a basis for res judicata. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625 (6th Cir. 2014). After the case was remanded, Defendants moved to dismiss based on the remaining three grounds upon which they previously sought relief. On August 5, 2016, the district court again granted the motions based on collateral estoppel and the fact that the claims failed on the merits. On August 31, 2016, WJO filed a timely notice of appeal.

## DISCUSSION

### I.   Standard of Review

This Court reviews *de novo* the district court's grant of summary judgment. *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In determining whether there is a "genuine issue for trial," this Court interprets the facts and draws all reasonable inferences therefrom in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Specifically, this Court reviews *de novo* a district court's ruling on issue preclusion. *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1097 (6th Cir. 2012).

## II. Analysis

Collateral estoppel or issue preclusion prevents parties from "raising an argument that they already fully litigated in an earlier legal proceeding." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). The purpose of issue preclusion "is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources." *Heike v. Cent. Michigan Univ. Bd. of Trustees*, 573 F. App'x 476, 479 (6th Cir. 2014) (quoting *Westwood Chem. Co., Inc. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir. 1981)).

### a. Law of the case

As a threshold matter, WJO argues that this Court has already resolved the issue preclusion question in its prior panel decision. *See W.J. O'Neil Co.*, 765 F.3d at 630. Accordingly, under the law of the case doctrine, the district court was bound by the previous panel's determination. Rejecting this argument, the district court concluded that the law of the case doctrine did not apply in the instant case. We review the district court's decision for an abuse of discretion, *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002), and see no basis for reversing the district court's determination.

Under the law of the case doctrine, "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016) (internal citations). Application of this doctrine is "limited to those questions necessarily decided in the earlier appeal." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). "[T]he phrase 'necessarily decided' . . . describes all issues that

were 'fully briefed and squarely decided' in an earlier appeal." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014).

The previous panel opinion did not squarely address the matter of issue preclusion. WJO seizes upon several quotations from the opinion, which when broadly construed, may appear to touch upon the issue before us today. However, for the law of the case doctrine to apply, more is required. *Cf. Westside Mothers v. Olszewski*, 454 F.3d 532, 539 (6th Cir. 2006) ("Where there is substantial doubt as to whether a prior panel actually decided an issue, the district court should not be foreclosed from considering the issue on remand."). The unambiguous holding of our prior panel opinion stated that *claim* preclusion was not appropriate because otherwise a party would be forced "either to arbitrate a claim it had not agreed to arbitrate, or to effectively give up the claim." *W.J. O'Neil Co.*, 765 F.3d at 631. Such a consideration does not extend to matters of issue preclusion because collateral estoppel bars the re-litigation of issues, regardless of the legal claims. *United States v. United Techs. Corp.*, 782 F.3d 718, 725–26 (6th Cir. 2015). Based on the law of the case, the arbitration panel did not have the authority to resolve WJO's tort claims. But it does not follow that in the course of resolving WJO's contract claims, the panel did not or could not decide a question of fact or an issue now implicated in WJO's tort suit. To the extent that WJO asserts otherwise, it misleadingly quotes a line from the opinion: "courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award." *W.J. O'Neil Co.*, 765 F.3d at 629. However, this line is derived from a section that explains whether or not the Full Faith and Credit Act requires this Court to consult Michigan law. This single sentence in the midst of an ancillary discussion does not signify the law of the case, and we are not barred from independently determining the issue before us.

### b. Issue preclusion

Prior to analyzing the district court's conclusion with respect to issue preclusion, we note at the outset that the question of whether to apply federal or Michigan preclusion law to evaluate the binding nature of an arbitration proceeding is less than clear.[2] *See FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 81 (1st Cir. 2011). But because neither party briefs the issue adequately nor disputes the application of Michigan law, we follow the parties' lead and apply Michigan law. Under Michigan law, "[c]ollateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Thomas v. Miller Canfield Paddock & Stone*, No. 314374, 2014 WL 5358392, at *7 (Mich. Ct. App. 2014). For collateral estoppel to apply three elements must be satisfied: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004). We address each in turn.

### i. Actually litigated

The first requirement for application of collateral estoppel is that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment.

---

[2] Generally, federal courts look to the common law or to the policies supporting *res judicata* and collateral estoppel in assessing the preclusive effect of decisions of other federal courts. *Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007) (When the judgment upon which a party relies to make its preclusion argument was issued by a federal court, "[this Court] look[s] to federal law to determine its preclusive effect."). However, Congress has mandated through the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, that "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). But "[a]rbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards[,]" *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 288 (1984). In other words, "federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award." *Id.*

*Senior Accountants, Analysts & Appraisers Ass'n v. City of Detroit*, 249 N.W.2d 121, 125 (Mich. 1976). This mandates that the ultimate issue in the second proceeding must be identical to that determined in the prior action. *City of Detroit v. Qualls*, 454 N.W.2d 374, 383 (Mich. 1990). Additionally, the issue must be "essential to the final judgment." *Thomas*, 2014 WL 5358392, at *8. The parties dispute whether the issue of damages, an essential element in each of WJO's stated tort claims, was previously litigated in the course of the arbitration proceeding.

WJO argues that it never raised its tort claims before the arbitration panel, and therefore, the issue of its damages could not have been decided in the course of those proceedings. Conversely, Defendants point to the language in the arbitration panel opinion concerning consequential damages to support their conclusion that the panel already decided that WJO is not entitled to any additional damages beyond those it received from the arbitration award. We recognize that collateral estoppel bars the relitigation of issues, regardless of the nature of the legal claims. *See Cole v. W. Side Auto Employees Fed. Credit Union*, 583 N.W.2d 226, 230 (1998). Accordingly, after reviewing the record of the arbitration proceeding, we conclude that the issue of WJO's tort damages has already been decided by the arbitration panel.

Throughout the arbitration proceeding, WJO sought a total of $19,427,619 worth of damages against BMC. Of this, WJO requested approximately $7 million in direct damages and $12 million in consequential damages. This claim for consequential damages consisted of the costs for extra labor and material overruns. It also consisted of damages for lost profits and its inability to pursue additional projects. However, WJO did not attempt to apportion blame amongst the culpable parties when bringing its contract claim against BMC. In fact, WJO's expert witness explicitly stated that he was tasked with adding up "all project damages and cost overruns that any way related to the Cardiovascular Center." (R. 59-12, Deposition, Page ID

# 2563). If anything, the majority of the evidence introduced by WJO indicated that its losses were overwhelmingly caused by the errors committed by the Defendants. Ultimately, the arbitration panel awarded WJO $2,135,109.20 in contract damages against BMC. But its holding was not just limited to WJO's contract damages. The arbitration panel also reached a determination regarding WJO's remaining consequential damages request. With respect to WJO's "various claims of damages for consequential damages, lost profits, and other indirect losses" the panel held that "the evidence presented by WJO on these issues was too speculative to support the claims and is not supported legally or factually. Accordingly, the claim for consequential damages is denied and WJO is awarded 0.00 for consequential damages and alleged lost profits." (R. 59-15, Interim Award, Page ID # 2628).

WJO now argues that the consequential damages that the panel resolved sounded only in contract, whereas the recovery it seeks in the instant case depends upon tort law. Supporting its argument, WJO contends that there is a distinction between damages in tort and consequential damages in contract. This statement is true insofar as it goes. But it does not necessarily govern this dispute nor provide any insight into the scope of the arbitration panel's conclusion. Damages for a breach of contract are generally limited to "the monetary value of the contract had the breaching party fully performed under it." *Kewin v. Massachusetts Mut.*, 295 N.W.2d 50 (Mich. 1980). Under Michigan law, consequential damages are recoverable for a breach of contract, but such damages are limited to finite circumstances. Consequential damages may be obtained only when those damages either arise naturally from the breach or can reasonably be said to have been in contemplation at the time the parties entered the contract. *See Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43, 46–48 (1994) (summarizing Michigan case law). The consequential damages that WJO sought in front of the arbitration panel were quite broad—

in fact they consisted of all possible losses suffered by WJO as a result of its participation in the construction of CVC. WJO has not offered any additional damages that it now seeks in tort that it did not previously seek before the arbitration panel. And since the arbitration panel has already specifically determined that WJO was not entitled to these damages, the question of fact necessary for a determination of damages in the instant tort action has already been decided. *Cf. Senior Accountants, Analysts & Appraisers Ass'n*, 249 N.W.2d at 125 (when question of fact regarding damages for back pay was decided by an agency, plaintiffs were not allowed to repackage the same damages claims under a different theory of liability).

Alternatively, WJO argues that in order for an issue to be collaterally estopped, its resolution must have been "necessary to the outcome" of the prior proceedings. According to WJO, the arbitration panel's statements concerning the evidentiary support and viability of WJO's claims for consequential damages were unnecessary and not essential to its determination with respect to that issue. In support of its argument, WJO points to language from the panel which first concluded that the contract between WJO and BMC contained a waiver of consequential damages. According to WJO, this was the primary basis for the panel's decision regarding consequential damages and the additional statements were merely dicta.

Initially, we note that WJO did not raise this specific argument before the district court. Arguments not raised before the district court are considered waived on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). But in any event, we reject WJO's argument. Under Michigan law, a party is precluded from re-litigating an issue that was decided so long as that issue was "essential." *Estes v. Titus*, 751 N.W.2d 493, 500 (Mich. 2008) (asking whether the issue was "essential" in the prior proceeding). And an issue may be "essential" even if it does not constitute the sole basis for the previous proceeding's decision. Michigan has explicitly

recognized that collateral estoppel extends to alternative grounds for a prior decision. *Dobrowski v. Jay Dee Contractors, Inc.*, No. 288206, 2010 WL 293069, at \*4 (Mich. Ct. App. 2010) ("Thus, we hold that collateral estoppel extends to alternate grounds for a prior decision."). Reading the arbitration panel's statements concerning consequential damages, we find that the panel's determination concerning the viability of such claims for damages was "essential" to its decision. Specifically, the arbitration panel makes clear that its conclusion regarding the inapplicability of consequential damages is "in addition to the contract waiver[.]" (R. 54-15, Interim Award, Page ID # 2103). This statement indicates that the arbitration panel's conclusion rests on two alternative grounds rather than one primary and one subordinate basis, which under Michigan law, satisfies the requirement for issue preclusion. Therefore, we hold that the issue of WJO's tort damages was actually litigated before the arbitration panel.

### ii.   Fair opportunity to litigate

In order for issue preclusion to apply, "the same parties must have had a full and fair opportunity to litigate the issue." *Monat*, 677 N.W.2d at 845–46 (2004). As the Supreme Court has stated, "[d]etermining whether a [litigant] has had a full and fair chance to litigate the [matter] in an earlier case is of necessity not a simple matter . . . . But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 333–34 (1971). After reviewing the record of the proceedings below, we are convinced that WJO had a full and fair opportunity to litigate the issue of its damages before the arbitration panel.

WJO actively participated in the arbitration hearing. It enjoyed representation from counsel. It presented opening and closing statements. A majority of the hearing was dedicated to

resolving WJO's damages claims. *See*, *e.g.*, (R. 54-12, Arbitration Transcript, Page ID # 2036) ("As far as we're concerned, this case is not about liability, it's about damages, there's no question. I still can't conceive there's going to be an argument in this case that the bad design didn't happen.") WJO called three different damages experts to opine on its losses. Voluminous testimonial and documentary evidence was developed during the arbitration. Direct and cross-examination of witnesses occurred. As this Court has stated in *Central Transport*, "even though the arbitrators were lax in admitting evidence and were not bound by the Federal Rules of Evidence . . . these liberal procedures do not detract from 'the basic elements of adjudicatory procedures' that the proceedings afforded them." *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 261 (6th Cir. 1991) (internal citations omitted). Accordingly, we find that the second element of collateral estoppel has been met.

### iii. Mutuality

WJO argues that under Michigan law, in order to assert collateral estoppel there must be mutuality of estoppel. Mutuality of estoppel "requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action." *Monat*, 677 N.W.2d at 846. In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' " *Lichon v. American Universal Ins. Co.*, N.W.2d 288 (Mich. 1990). There is some doubt whether mutuality of estoppel is met in the present case.[3]

However, as the district court properly recognized, Michigan law does not require mutuality of estoppel if it is asserted defensively. The Michigan Supreme Court has stated that

---

[3] The district court concluded that there was no mutuality of estoppel because neither Defendant was a party to the contract which was the genesis of the dispute between WJO and BMC. However this conclusion may be incorrect because mutuality is satisfied when the party taking advantage of the earlier adjudication would be bound by it. Defendants claim that they are bound by the final arbitration award. But this is not an issue we need to resolve at this time.

"where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Monat*, 677 N.W.2d at 852. This understanding is consistent with the trend in other states. *See*, *e.g.*, *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass'n*, 122 P.2d 892, 895 (Cal. 1942). This Circuit has also dispensed with the mutuality requirement in cases where a party invokes preclusion defensively rather than offensively. *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098–99 (6th Cir. 2012) ("Mutuality between the parties is not required in defensive collateral estoppel cases so long as 'the plaintiff has had a full and fair opportunity to litigate the contested issue previously.' ") (internal citations omitted). WJO had a full and fair opportunity to litigate the issue during the arbitration, as described above. And because Defendants are asserting estoppel defensively—against WJO's tort action—mutuality is not required.

WJO does not dispute that mutuality is being asserted defensively. Nor does it dispute that Michigan law relaxes the mutuality requirement when collateral estoppel is asserted defensively. Rather, WJO argues that such an exception should be read narrowly so as to not apply when the previous proceeding involved an unconfirmed arbitration award. WJO neglects to provide any case law to support its assertion that unconfirmed arbitrations are subject to different treatment for purposes of the mutuality requirement. We cannot find any Michigan Supreme Court case which directly addresses this scenario. In resolving issues of Michigan law, this Court must look "to the final decisions of the state's highest court, and if there is no decision directly on point, then [this Court] must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013). Absent any Michigan Supreme Court authority, we look to the Michigan intermediate appellate courts for guidance. *See id.*

In *Thomas v. Miller Canfield Paddock & Stone*, the Michigan Court of Appeals recognized that collateral estoppel was appropriate and no mutuality was required even though the prior proceeding was arbitration. 2014 WL 5358392, at *8. Admittedly, in that case, the arbitration award was confirmed by a state court. However, in *Jackson-Phelps v. Dipiero*, No. 323132, 2015 WL 9257765, at *1 (Mich. Ct. App. 2015), the Michigan Court of Appeals reached a comparable result without indicating whether or not the underlying arbitration award was confirmed. In the face of such silence, we are left to conclude that confirmation is not a significant consideration for Michigan courts when deciding whether or not mutuality should be applied to an arbitration. Absent any authority to suggest otherwise, we conclude that the Michigan Supreme Court would not distinguish between confirmed and non-confirmed arbitration awards in applying the mutuality requirement. Consequently, we hold that Defendants have satisfied all three elements necessary under Michigan law to assert issue preclusion. Therefore, WJO cannot prevail on the merits of its tort claims since damages are one of the dispositive elements implicated in each of its underlying causes of action against Defendants and WJO is bound by a previous determination finding no entitlement to such disputed damages.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's decision.